Ms. Costner. Good afternoon, Your Honors. May it please the court. Um, my name is Lisa Costner, and I'm here today representing the appellant Bobby John Kobito. In 2019, Mr Kobito was charged with and pled guilty to possession of an unregistered firearm, specifically a homemade silencer. In the presenter's report, the terrorism enhancement was applied pursuant to three a 1.4 of the Kobito's advisory guideline range from a base offense level of 18 to 30 and his criminal history category from 1 to 6. The presenter's report also applied a four level increase for protection of the silencer in connection with another felony offense. The presenter's report, the felony offense, um, that the presenter's report stated was felony terroristic threats. That enhancement was pursuant to 2 K 2.1 B 6 B of the sentencing guidelines. Mr Kobito objected to both of those enhancements, and both were overruled by the district court. The court, um, your client, your client entered guilty plea, right? That's correct, Your Honor. He did. And he hasn't. He doesn't. He doesn't challenge the guilty plea. Uh, I'm sorry, Your Honor. He doesn't challenge the guilty plea and challenges the two. These two enhancements. That's right. Your Honor, I did not represent Mr Kobito in the lower court, but there was no motion filed to set aside that guilty plea that I saw on the record and no hearing. So he proceeded forward after pleading guilty. Um, that's right. No issue. There's no issue about the validity of the guilty plea. No, the only issue is only issue is sentencing. And he challenges how Judge Tilley handled these two enhancements. Yes, Your Honor, that is correct. Um, and then the final analysis, Judge Tilley, uh, gave him what? Five years. That is correct. Um, he faced a statutory maximum of 120 months. Judge Tilley did very downward and sentenced him to months at active time. Right. He could have got 10 years. Yes, Your Honor. That is correct. He could have. And the terrorism incident would have been an attack on the Terry Sanford courthouse in Raleigh. Yes, Your Honor. The government, um, what the government, um, um, sentencing was that the silencer was committed. I mean, some possessions. The silencer was committed to further a violation of 18 U. S. Code 13 63, which is attempt or conspiracy to injure or destroy property within the special time and territorial jurisdiction United States. And that was the Terry Sanford federal building in Raleigh. Okay, go ahead. I'm sorry. I just want to get that background in here. Thank you, Your Honor. Your Honor, Your Honor, the this terrorism enhancement has a huge impact on a defendant sentence. Had it not been applied to Mr Kibito, his advisory guideline range would have been 18. Of course, he would have gotten a three level deduction for acceptance of responsibility. And without the four level increase for possession, possessing the silencer in connection with another felony, his criminal history category would have been one, and his advisory range would have been 18 to 24 months. A pretty significant decrease from the statutory maximum that he faced of 120 months. Um, three for the sentence. It got on. I'm sorry. I thought a question. Uh, you're fading. You're fading out some for me. Get closer to the mic. Yes, I'll try my best. Is this better? It's better. Okay. Um, so it's on. If the offense is a felony that involved or was intended to promote a federal crime of terrorism, that's when the guideline scores increased 12 levels or to a level 32, whichever is higher. And then the criminal history category of the defendant goes automatically to level six. Um, we can find the definition for federal crime of terrorism by referring to 18 U. S. Code 2332 B G five. And what that says is that a crime of the federal crime of terrorism must be an offense that is calculated to influence or affect the conduct of government by intimidation or coercion or to retaliate against government conduct and is a violation of the certain enumerated statutes. And it's sentencing. As I said before, the government contended that that statute was 18 U. S. Code 13 63. Um, in our brief, we raised several issues with respect to whether that the terrorism enhancement should have been applied. And we argued that, um, first of all, Mr Cavito could not have been convicted of an attempt to vile. I'm sorry, a conspiracy to violate 18 U. S. Code 13 63. The only possible co agent. And as this court has held a government agent participating in a sting operation is not a co conspirator. We that Mr Cavito could not have been convicted of attempt to violate 18 U. S. Code 13 63 that there's just the government couldn't prove or not sufficiently that what Mr Cavito did was to take substantial steps towards completion of the crime. Mr Cavito certainly engaged in a lot of phone conversation talking about the crime and and what he, you know, his thoughts about it. But there's no evidence that he took any substantial steps towards completion of the crime. And I would say that what his conversations sounded like was more along the lines of trying to impress this undercover agent. Um, if you if you look at, um, uh, go ahead. Um, Judge Judge King, did you want to have a question? No, no, no, ma'am. Sorry. They light up sometimes. Oh, the silencer. The possession of the silencer. Yeah. Well, certainly in his conversations, he discusses the silencer and and what he you know what he would do with the silencer. But as far as the rest of the conversations, Judge Gregory, he talks about there's never any any conversation about a specific plan, a day, a time, how you know how he's gonna get there. You know, you need that. Do you need that as an active furtherance? Well, I would say that he at least, um, that he at least needs to be some evidence that goes beyond just the the intent to commit this act. He's trying to encourage people to do it. Well, I would disagree. I think he's talking to agent. He does say something along the lines of, you know, it would be better to have two people, you know, but he never never goes so far is to actually put together a real plan to do this. And he never really you're not citing the law. Oh, it doesn't have to be a precise plan. I mean, he did more than just possess the silencer, right? It was in conjunction with shooting into buildings. Wasn't that a silencer would be easier to perfect that, right? He did talk about that. And you're saying that's not enough here. We're not. This is not an indictment. This is an enhancement that only has to be proven by preponderance of evidence. I'm sorry, right, correct? Yes, preponderance of the evidence. That's exactly correct. But I would characterize a lot of what he said is hyperbole. I mean, he's bragging, boasting, but he's doing very little. That's your spin on it. And if it was a trial, maybe you would confess the jury it was. Is that the standard for an enhancement? I mean, my goodness, we and they talk about the quantities of drug you sold and people that never even come to court. And now you're saying for this case, we have to have a full blown would be close to a trial with with jury instructions and everything you're talking about, because now you said it was just blustering. It was hyperbole. He didn't really mean this. I understand you as counsel. You're doing a good job for his side. But is that enough to take this out of a crime that involved in the act of terrorism for an enhancement? Well, I think when you look at what he did say and what he didn't say and contrast that so, you know, he talks about he sends a Google map, for example, to this agent. Well, anybody could go and, you know, search Google map and do that. He doesn't act in further. I mean, this is a Google map. I would say nobody could send the address of the bank. You're gonna rob. We use those is acting furtherance. Rent the car. Put gas in it. Uh, make arrangements. Those are acts in furtherance. We do all the time. I mean, it's something special about this case that now all of a sudden, Oh, my goodness, you can't. We can't look at these things. How I would argue that what he was doing was engaging in a lot of talk, and he was bragging and trying, but he pled guilty. Miss Foster, he pled guilty to all this. Uh, he pled guilty. And he and he and Judge Kelly reviewed, uh, the facts and found by preponderance of the evidence that both these enhancements apply. And then he cut him a break. He reduced the sentence about 50%. He cut him a break. He got a sentencing break. I'm sorry. Substantial sentencing break. The type of offenses that he's been convicted of. Go ahead. I can't disagree that a 50% reduction in an advisory guideline sentence is not a substantial break. I I definitely agree with that. But I think it's that is a different issue than whether or not this terrorism enhancements should have applied. And if it wasn't applied, his guideline rates would have been considerably lower, even than the 60 months that he got from from Judge Tilly. Um, so what I would say is that when you if you look at the conversations and in the time, you know, this begins, um, in February of 2000 and 18 with the conversation where, you know, Mr does engage in a lot of talk. Um, then, um, there is some conversation in March and then radio silence for a pretty good while. Um, in all the conversation, it appears is initiated, at least starting in July by the agent contacting Mr Kibito to talk about, um, about the silencer and Mr Kibito's you know, I don't think I can do this. I think he's and I think you can interpret that as Mr Kibito withdrawing in a way trying to save face. I can't do this. I'm not, you know, I'm I'm older. I've got some ailments. And then ultimately, um, two months later, he withdraws completely. And I think, too, if you look at the timeline, the government waits a month before they even execute a search warrant and Mr Kibito's house. So clearly, they're not too worried that Mr Kibito is heading over to the Terry Sanford building to start to shoot or else they would have. They would have done something about it long before October 25th of 2000 and 18. And then when they do search, they don't find the firearm. They find the two silencers, but they don't find anything that Mr Kibito could attach the silencer student to do anything. And so I think that that you can consider all of that in deciding whether or not there was sufficient evidence of Mr Kibito's intent to apply both the terrorism enhancement and the four levels of possession of the firearm in conjunction with the felony. Miss Costner, can I ask you about the terrorism enhancement and this issue about the Terry Sanford federal building and and whether or not it was within is within the special territorial jurisdiction of the United States. So, um, your client did plead guilty, but I don't think he admitted that as part of his plea, right? That's correct. That was not a part of a possession of the, um, have made silence. So, um, you raise this point and I'm just wondering, how do you suggest that the government should have been able to prove this up? And could the court simply have taken judicial notice of that fact? And can't we do that today? Um, first of all, if the government, if you look at the record, the government offers this 18 U. S. Code 13 63 as a supporting offense to support the terrorism enhancement. So they put that forward and it would be my argument that at that point, if they're going to contend that that supports it, and they also at least should have some obligation to put on some evidence that the Terry Sanford building fits within that definition of special maritime and territorial jurisdiction. And that wasn't done. And whether the court could have taken judicial notice, probably, and whether this court could probably, but that didn't happen in the lower court. There was no that issue was not raised, and it was in the court. They know findings regarding whether or not that part of that I think I'm over my time. Unless there are other questions, I will stop. All right. Thank you, Miss Cosmo. Uh, his way. Thank you. May I please the court? The district court properly applied both sentencing enhancements in this case because of the defendant's intent, and that intent was to use his homemade bouncers in a planned attack on the Terry Sanford building. And I'd like to start by addressing the terrorism enhancement and the terrorism enhancement applies when the offense involves or was intended to promote a federal crime of terrorism and the federal crime of terrorism. That's a defined term. It's set out in a step or in a separate statute. There's the two components. There's the specific intent component, and then there's the requirement that there be one of several enumerated statutes involved. But when we're looking at the text of the terrorism enhancement itself, there's two separate prongs here. There's the involved prong, and there's the intended to promote prong, and it appears from my research that this court has only formally addressed the involved prong. But the Second Circuit, the 11th or in the Sixth Circuit have all addressed this second prong, the intended to promote prong, and explain that that prong is broader than the involved prong. It applies when the defendant promotes or encourages or has the goal of trying to help bring into being a federal crime of terrorism. And those courts explain that this part of the enhancement can apply even if the defendant wasn't convicted of a federal crime of terrorism, even if he couldn't have been convicted of a federal crime of terrorism. And I think the 11th Circuit in United States versus Manti spells that out. They say there that this part of the enhancement doesn't hinge on the defendant's ability to be able to carry out a federal crime of terrorism, and it doesn't hinge on his degree of separation from a federal crime of terrorism. It hinges on his motive and his intent. And when we look at the record here, we have an undisputed factual record, and the record is full of facts that lead us to show that the defendant's intent was to use these silencers in the planned attack. It was more than just talk. He set up a meeting with this confidential human source. They met on three separate occasions where he discussed the plans, and each time he reaffirmed his intent. He said, I still believe in what needs to be done. He was angry at the government. He said, I think the NSA is spying on everybody and everything. And then he launches into this plan, and he has a detailed plan. He talks about using a common round to help avoid detection. He talks about wiping fingerprints off of the ammunition so that it can't be traced. He talks about putting film over his license plate so when they drive away, their security cameras can't get to the license plate. And then he follows up by sending a picture of the Terry Sanford Federal Building and sending a document describing his grievances against the United States government. And even when he gets to the point where he walks away from working with that particular human, confidential human source, he still says, I believe in what needs to be done. He still reaffirms his intent to carry out this plan. And then when the search warrant is executed at his residence, they find the homemade silencers, the silencers that he had talked about with this source, that could be used to help detection, help avoid detection, to help mask the sound of the gunfire, because he wanted to fire into this Terry Sanford Federal Building. So the record is replete with indications that his intent was to promote a federal crime of terrorism. And as was discussed in the position paper and at sentencing, the federal crime of terrorism at issue here is 18 U.S.C. 1363, which makes it a crime to willfully or maliciously destroy or injure property within the jurisdiction of the United States. And to your question, Judge, Judge Diaz, about the lack of factual finding about whether the Terry Sanford Federal Building is within the jurisdiction of the United States. Two points to that. Even if we assume that the for some reason that the Terry Sanford Building is not in the jurisdiction of the United States, we still win and this enhancement still applies. And that is because factual impossibility wouldn't negate the defendant's intent. The defendant wanted to carry out an attack on a federal building. That's clear in his opinion. Like I said, if the building turns out not to be a federal building, his intent was still to attack a federal building. So that issue is I can't read. This is just can't we readily take judicial notice that the Terry Sanford Federal Building and courthouse satisfies that requirement? Yes, Judge King, that's correct. And I believe we cited that case in our brief that said that you can take judicial notice of that fact. I wanted to offer offer this alternative argument as well. But we think when I was a prosecutor, we used to take get the judge take judicial notice of those kinds of things. And, and the where the district was kind of the like the Eastern District of North Carolina and all of those things matter related to geography, basically. Yes, that's correct. I agree that this court can take judicial notice of of that fact. And this case we cited in our brief, this court took judicial notice of the fact that the Blue Ridge Parkway is within the jurisdiction of the United States. And that same analysis does apply here that this court could take judicial notice of that fact. It also states in the PSR that the Terry Sanford Federal Building is is in jurisdiction. Can I ask you about that issue that Terry Sanford Building because I mean, the case that you cited with respect to the Blue Ridge Parkway is a little bit different. The court would have our court, a district court, any court would have to take judicial notice that the federal government accepted jurisdiction over the building in this case, the courthouse by filing a notice of acceptance with the governor of the state or in some other manner, prescribed by the laws of the state where the land is situated. So how would we know that that actually happened in this case? Your Honor, there would probably have to be I either we would have to submit something at this stage or there would have to be something submitted at the district court stage. That information is concedingly not in the record. It does say in the PSR that the Terry Sanford Federal Building is within the district court adopted the PSR. And then I would also like to go back to my argument about factual impossibility and how that doesn't negate the defendant's intent. And his intent was to attack a federal building. He was angry with the NSA. He was angry with the FBI, the ATF, and he he wanted to retaliate by attacking this federal building. He even said at one point evil. So you say you say it's enough if he if he thought it was a federal building and intended to attack it. That's correct, Your Honor. So, for example, if the defendant wanted to, I mean, he must have. He must have admitted that at the guilty plea that much of it, right? Your Honor, I don't know if it says in the factual basis that was used at the guilty. Okay, maybe you don't. All right. I don't know that's in here either. I'm sorry. I didn't mean to interrupt you. Does the PSR state that it's a federal building? The last page of the PSR when probation responds to the defendant's initial objections, it does say at that point that the Terry Sanford Federal Building is within the jurisdiction of the United States. And that was objected to. It wasn't objected to at the sentencing hearing. Was that your question? Right. That's my question. It was not correct. Correct. So this court is under plain error review at this stage. But just to belabor my point at the factual impossibility for another minute, if the defendant if his plan was to shoot at the president, but he accidentally shot at me thinking that I was the president, that wouldn't negate his intent. His intent was still to shoot at the president. And I think that applies here because he said that he wanted his plan was to attack a federal building. So even if the Terry Sanford Federal Building is not a federal building, he still had the intent to try to encourage or bring about this federal crime of terrorism. So for those reasons, this enhancement was a properly applied by the district court. And if there's no further questions, I'd like to talk briefly about the firearms enhancement. So when we look at the firearms enhancement under Section 2k2.1b6b, there's also two separate provisions embedded within that enhancement. When we look at the second provision, it applies if the defendant possessed or transferred a firearm with the knowledge, intent, or reason to believe that it would be used in connection with another felony offense. So the operative words there, the would be show that this can apply even to felony offenses that have not necessarily occurred. And we filed a letter, 28 J letter, excuse me, on this point, incited a case from the Ninth Circuit Court of Appeals as persuasive United States versus Jemison. And in that case, the Ninth Circuit examined that this part of the provision and explained this, this enhancement applies even to felony offenses that haven't occurred. And they gave us an example of bank robbery. If the defendant purchases a firearm and he intends to use that firearm in a bank robbery, even, even if he hasn't picked out the particular bank that he's going to rob or the particular day that he's going to do it, if he's formed the firm intent to use that gun in a bank robbery, then the enhancement applies. And that's persuasive authority. And that situation applies here. The defendant had the homemade silencers and he planned to use them in this planned attack. That is a separate felony. So for that reason, this enhancement also applies. And if this court has no further questions, I would concede my time and rest on the brief and respectfully request that the court affirm the lower court's decision. Thank you, counsel. Ms. Kozner, you have some time reserved. Thank you, Dr. Harris. Just a couple of points. First of all, with respect to the pre-sentence, there was an objection to the pre-sentence saying that the federal building in Raleigh is in the territorial jurisdiction of the United States. That was a response by the probation officer to defendant's objection. So for the defendant to object to the response to the objections, that's just not something that normally would happen. And it's not in the report itself. So I would just contend that that is part and parcel of the defendant's objections to the pre-sentence report and that Mr. Inman's attorney should not have had to also object to the response to the objections. With respect to the argument concerning the increase for possession of the firearm in conjunction with another felony offense, raising the case, Ms. Wade raised the U.S. versus, I think it's Jimenez. Interestingly enough, if you read the case, what happened in that case was the defendant possessed a firearm and said he was going to go off on some police officer or law enforcement officers. And in looking at the defendant's comments, the court in that case determined that what he did instead was not sufficient to support that fourth offense. I would argue that Mr. Kibita's comments are more along those lines than evidence of an intent or evidence of this felony offense. And that he, as I said before, his comments were hyperbole, that he actually, other than possessing this silencer, which he pled guilty to, the only evidence about anything else that he wanted to do or with respect to that felony was what he said to this person on the phone. And in that way, he is more like the defendant in the case cited by Ms. Wade. And I would just ask that the court reverse the decision regarding these sentencing enhancements and send it back for resentencing. If the court has any other questions, I'm happy to answer them, but if not... Did I understand you to say the distinction is that he was on the phone? You're saying that it would be different if he had been face-to-face with him? No, I'm sorry. There were meetings face-to-face, text messages. I apologize. I meant more that it was conversation and communication, not evidence of any further actions that he took to somehow further some desire to shoot into the federal building, the Harry Stanford building. All right. Thank you. All right. Counsel, I know, Ms. Costner, you're a court opponent. I want to thank you, particularly on behalf of the Fourth Circuit. We depend on lawyers like yourself to take these cases and as well as you've done and perform quite ably. And we appreciate that. We thank you so much. Ms. Wade, also, we thank you for your able representation in the United States. With that, we'll have to extend a virtual handshake to you and make do with it the best in terms of our tradition, but please know we appreciate your arguments. And thank you so
judges: Roger L. Gregory, Robert B. King, Albert Diaz